**E-filed on: 5/20/09**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> MURDAUGH STUART MADDEN, JR. <br> Defendant. | No. CR-07-00245 RMW <br><br> ORDER RE: MADDEN'S MOTION TO WITHDRAW PLEA <br><br> [Re: Docket No. 29, 78] |

Defendant Murdaugh Stuart Madden, Jr. seeks by his motion originally filed on August 26, 2008 and amended February 27, 2009 to withdraw the guilty plea that he entered on May 10, 2007. The court has read the papers, heard the arguments of counsel, and hereby denies the motion as it finds that Madden has not demonstrated a fair and just reason for withdrawing his plea.

## I. BACKGROUND

Madden was charged by an information filed April 24, 2007 with possession of matter which had been transported in interstate commerce and contained visual depiction of one or more minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). Docket No. 1 ("Dck # _____").

On May 10, 2007, Madden, represented by counsel, waived indictment and entered a guilty plea pursuant to a plea agreement. Dck #'s 2, 5 and 6. District Judge Jeremy Fogel engaged in a

ORDER RE: MADDEN'S MOTION TO WITHDRAW PLEA
CR-07-00245 RMW

thorough colloquy with Madden as required by subsections (b) and (c) of Rule 11 before accepting his plea. The following exchanges are among those that took place during the colloquy:

    The Clerk: raise your right hand, please.

    (Murdaugh Madden, defendant, sworn.)

    The Defendant: I do.

    The Clerk: Thank you.

    The Court: All right. Mr. Madden, I'm going to be asking you a number of questions. As we go through this, if at any point you need me to repeat anything or explain anything, just let me know.

    If you need to confer with counsel before you answer a question, please do that.

    And please remember you've just promised to tell the truth. If you tell me anything now that is not true, then the government can file separate charges with respect to that.

    Do you understand, sir?

    The Defendant: Yes.

Transcript dated 5/10/2007 at 2:25-3:17 ("Tr. 5/10/2007 at _____").

    The Court: And what is the extent of your formal education?

    The Defendant: Undergraduate, Master's in history thereafter, and a J.D.

*Id.* at 4:4-7.

    The Court: Has anyone made any threats against you in order to get you to plead guilty?

    The Defendant: No.

    The Court: Are you presently under the influence of any drugs or medication?

    The Defendant: No drugs, your honor. Some ordinary psychiatric medications.

    The Court: All right. And for the record, what are those?

The Defendant: They include Depakote, Seroquel, Sertraline, Trazodone, Zoloft - - I may perhaps have missed one in there.

The Court: All right. And what conditions are those drugs intended to treat?

The Defendant: Depression and Bipolar II.

The Court: Okay. Do you believe that any of those drugs are affecting your ability to think clearly or understand what's taking place right now?

The Defendant: No.

The Court: And do you have any question at all that your mental state at this point is appropriate for the proceeding which we're engaging in?

The Defendant: I have no question.

The Court: All right. Is your decision to plead guilty free and voluntary?

The Defendant: Yes.

*Id.* at 4:24 - 6:2.

On October 9, 2007 Madden filed a Substitution of Counsel and since has been represented by e. robert (bob) wallach, James McManis and Dennis P. Riordan. Dck # 11.

On August 26, 2008, one year and three months after entering his guilty plea, Madden filed a Motion to Withdraw Plea accompanied by the supporting declaration of Dr. John M. Dusay. Dck # 29. Dr. Dusay is a medical doctor engaged in the private practice of psychiatry, and has been an Associate Clinical Professor at the University of California, School of Medicine, San Francisco for just under 30 years. *Id.* at ¶ 2 and Ex. A thereto. In addition to other positions, Dr. Dusay currently serves as a lecturer to professionals regarding "expert witness evaluation of neuro-psychiatric complaints for medical/legal purposes," provides for the California Department of Corrections "evaluation, consultation, and medical management of mentally ill offenders," and serves as a Medical Expert for the Office of Disability and Adjudication and Review for the Ninth Federal

District (formerly Office of Hearings and Appeals). *Id.* at Ex. A. Madden was referred by his new counsel to Dr. Dusay for a psychiatric evaluation to be offered in this case.

In his declaration, Dr. Dusay states that between October 25, 2007[1] and May 15, 2008, he evaluated defendant Madden for a total of sixteen hours in office (*id.* at ¶ 5) and diagnosed Madden with Bipolar II Disorder, Insomnia related to Bipolar Disorder, and Alcohol Dependence with sustained partial remission (*id.* at ¶ 19). Dr. Dusay further opined that "when Mr. Madden entered his plea . . . it was not done 'freely and voluntarily,' and . . . his waiver of rights was not 'knowing and intelligent.'" *Id*. at. ¶ 8. He reported that "[t]hree days before he was to enter his plea, Mr. Madden arrived in California from New York without his medications," and so "[w]hen he appeared before Judge Fogel he had been off all medications approximately 84 hours." *Id*. at. ¶ 15. Moreover, Dr. Dusay stated, "[i]n my professional opinion, Stuart Madden had a total withdrawal from his five established medications 84 hours before entering his plea before Judge Fogel." *Id.* at. ¶ 21. The five medications that defendant Madden allegedly failed to take were Depakote and Seroquel (prescribed for mood stability); Wellbutrin and Zoloft (antidepressants); and Trazodone (prescribed for insomnia). *Id*. at. ¶ 25.

At a hearing held on September 3, 2008, the government requested that Madden be required to declare that he had not taken his prescribed medications during the eighty-four hours before the entry of his plea since he was basing his motion to withdraw his plea on that assertion. Transcript dated 9/3/08 at 3:12-23 ("Tr. dtd. 9/3/08 at _____"). Counsel for defendant expressed an unwillingness to provide such a declaration but Judge Fogel nevertheless gave defendant a week to consider whether he would submit any supplemental material and the government a week to reply. *Id.* at 8:23-9:4. Defendant's counsel responded with a letter brief citing the Fifth Amendment and stating that "[m]uch as Mr. Madden might like to submit a declaration, he will not–because his counsel will not permit it." If he submitted a declaration, "the prosecutor wold be entitled to cross-

---

[1] Dr. Dusay's declaration indicates that he evaluated the defendant between *May* 25, 2007 and May 15, 2008. In his testimony before Judge Fogel, however, Dr. Dusay clarified that "that was incorrect" and May 25, 2007 was the date he "agreed to take on the case" but he "saw [defendant Madden] first on October 25." Tr. dtd.10/8/08 at 29:25-30:9.

ORDER RE: MADDEN'S MOTION TO WITHDRAW PLEA
CR-07-00245 RMW

4

examine him." Def.'s Supplemental Letter Br. dtd. 9/10/08 (Docket No. 32).

At the September 3, 2008 hearing Judge Fogel ordered an evidentiary hearing to take place on October 8, 2008. At that hearing, Dr. Dusay testified in response to questions by Judge Fogel, defendant's counsel, and the prosecutor. Dr. Dusay explained that he did not have any independent knowledge as to the alleged fact that defendant Madden was not taking his medications at the time he entered his guilty plea. The information was based solely on what defendant Madden told him. Tr. dtd. 10/8/08 at 8:7-8:16.

Madden's written motion to withdraw his plea as originally filed is based solely on Madden's alleged impaired and unreliable mental capacity to enter a "voluntary plea" resulting from the deprivation of his medications for eighty-four hours before the plea hearing. Dr. Dusay, however, was asked at the hearing whether Madden's mental state at the time he entered his plea would have been the same had he taken his medications. Dr. Dusay's answers were equivocal. He first answered, "it may be modified to a certain extent, but it would essentially be the same." *Id.* at 9:6-9:13. He later said that "I think - - I would say that . . . ." *Id.* at 11:2-3. Then, he responded to the court's final questions as follows:

> The Court: . . . . I'm trying to figure out to what extent your opinion as to Mr. Madden's mental state on May 10th, 2007, is dependent upon his level of compliance with his medications.
>
> The Witness: I think that very much influenced it.
>
> The Court: So you are less confident as to – again, I don't want to put words in your mouth – you are less confident as to your conclusions if you were to assume he was compliant with his medications?
>
> The Witness: I would say so.

*Id.* at 16:6-17.

After the court completed its questions, Dr. Dusay responded as follows to a leading question by defense counsel:

ORDER RE: MADDEN'S MOTION TO WITHDRAW PLEA
CR-07-00245 RMW

5

> Q. But as I recall your testimony earlier when the judge was examining you, it was also your opinion, is it not, that even if he were fully medicated, given the psychiatric conditions which you've explained and described, he would not have been able, at the time he appeared before the court, to make a meaningful change of plea as he did in this case; is that correct?
>
> A. That's correct.

*Id.* at 43:4-12.

As a result of Dr. Dusay's testimony and arguments made at the October 8, 2008 hearing, Judge Fogel asked the parties to brief three issues: (1) whether there was an issue as to Madden's current competence; (2) whether Madden's statements to Dr. Dusay are admissible for the truth of the matter asserted; and (3) whether the prosecutor should be allowed to review Dr. Dusay's notes and call Madden's prior attorneys to testify about their observations of Madden at the time he entered his plea. The parties submitted their supplemental briefs before the next court hearing on November 19, 2008.[2]

At the hearing, Judge Fogel advised the parties that he had previously, in preparation for sentencing, reviewed a Presentence Report and spoken with the probation officer assigned to the case. Transcript dated 11/19/08 at 24:1-7 ("Tr. dtd 11/19/08 at _____."). Later, the parties discovered that some material that defendant claims is confidential and misleading is contained in that Presentence Report and that the parties had an understanding that the information would not to be disclosed. The understanding was not part of Madden's written plea agreement. Although the government was not at fault for the disclosure, the defense nevertheless maintains it was a breach of the parties' understanding and entitles defendant to withdraw his plea.

On January 14, 2009, Judge Fogel notified the parties that he had seen the information that was not supposed to be disclosed, ordered certain transcripts and documents sealed (Dck #'s 67, 70, 71, 79, 80, 81), and recused himself from further participation. Court Minutes dtd. 1/14/2009 Dck #

---

[2] Although the parties briefed the third issue, the court does not discuss that issue because resolution is not necessary to decide the pending motion to withdraw.

ORDER RE: MADDEN'S MOTION TO WITHDRAW PLEA
CR-07-00245 RMW

6

70. On January 22, 2009, the case was reassigned to this court. Order Assigning Case to Judge Whyte Dck # 72.

Subsequently, on February 27, 2009, defendant Madden filed an Amended Motion to Withdraw Plea (Dck # 78), in which he added the alleged breach by the government as a basis for withdrawing his guilty plea. *See id.* On March 23, 2009 defendant Madden also added the assertion that he should be allowed to withdraw his plea because Judge Fogel has recused himself and therefore cannot be the sentencing judge.

## II. ANALYSIS

### A.     Bases for Motion to Withdraw

Defendant currently seeks to withdraw his plea on three grounds. First, relying on Dr. Dusay's declaration, defendant Madden contends that he did not knowingly and intelligently waive his rights when he entered his guilty plea on May 10, 2007. Next, defendant Madden argues that a breach of agreement occurred when allegedly confidential and inaccurate material was disclosed to Judge Fogel in a  presentence report and this breach entitles him to withdraw his plea of guilty. Finally, basing his argument on California state law, defendant Madden asserts that he is entitled to be sentenced by the same judge who accepted his plea, and since that judge has recused himself, he is entitled to withdraw his plea.

### B.     Standard to Withdraw Plea

Rule 11 of the Federal Rules of Criminal Procedure provides that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes a sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. Pro. 11(d)(2)(B). "[T]he decision to allow withdrawal of a plea is solely within the discretion of the district court." *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004) (quoting *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003)). Although the standard requiring a "fair and just reason" is to be applied liberally, defendant has the burden of demonstrating such a reason. *United States v. Turner*, 898 F.2d 705, 713 (9th Cir. 1990); *see United States v. Nagra*, 147 F.3d 875, 880 (9th Cir. 1998). "Fair and just reasons for withdrawal include inadequate Rule 11 plea

colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *Id.*

### C. Knowing and Intelligent Waiver

#### 1. Opinion Based Upon Failure to Take Psychiatric Medications

The defendant first argues that because he failed to take five prescription medications within the eighty-four hours prior to entering his plea, his mental state was such that he did not freely and voluntarily enter his guilty plea and his waiver of rights was neither knowing nor intelligent. *See* Def.'s Reply to Gov.'s Resp. to Def.'s Fourth Supp. Br. 4:16-20. The defendant emphasizes that "the Government has not produced a single piece of evidence to refute Dr. Dusay's uncontested professional opinion that Madden's plea was not knowing and voluntary." Madden's Fourth Supplemental Brief at 4:2-4. However, the defendant overlooks a fundamental flaw in his position. There is no evidence that defendant failed to take his medications.

Dr. Dusay testified that he had no independent knowledge that the defendant failed to take his medications other than the defendant's statements to him. Beyond what Madden told Dr. Dusay, Madden offers no evidence suggesting that he had not taken his medications or that "[his] mental state at this point is [not] appropriate for the proceeding which we're engaging in." Tr. dtd. 5/10/2007 at 5:20-6:2. Dr. Dusay's statement that defendant told him that he had not taken his medications during the eighty-four hours before he entered his plea is hearsay (FRE 801(c)) and cannot be considered for its truth. FRE 802.

Defendant, nevertheless, argues that Dr. Dusay's opinion is admissible because an expert can rely on facts or data not otherwise admissible if it is of the type reasonably relied upon by experts in the field. FRE 703. A psychiatrist can undoubtedly rely on a history provided by his patient, particularly where he finds the information credible as Dr. Dusay did in this case. However, Dr. Dusay's opinion does not make the essential fact he assumed either true or admissible for its truth. If there were admissible evidence that Madden did not take his medications, Dr. Dusay's opinion would be relevant and admissible. However, as the evidence stands, his opinion is irrelevant because the evidence does not show that Madden failed to take his medications.

## 2. Opinion Based Upon Assumption that Psychiatric Medications Were Taken

Although defendant's original motion supported by Dr. Dusay's declaration was made solely on the assumption that Madden did not take his medications during the eighty-four hours before he entered his guilty plea, Madden now contends that his plea was not free and voluntary even if he were on his medications. Dr. Dusay's somewhat equivocal opinion that Madden's plea was not free and voluntary even if Madden had been taking his medication lacks a supporting foundation or at least suffers from the lack of a showing of that foundation. The defense insists that the issue is not whether Madden is competent now or was at the time of his plea but rather whether he was able to make a knowing and intelligent waiver of his rights when he entered his plea. Defendant argues:

> [A]ll that is required for competence is that a defendant is "able to understand the nature of the proceedings and to assist in his defense," a very elemental level of functioning. Not surprisingly, the law entrusts defense counsel with the duty of making this determination, since counsel as an officer of the court usually has the closest contact with the defendant. Here, Mr. Madden is represented by counsel — Mr. wallach and Mr. McManis – whose credentials are beyond reproach.
> Thus, the issue is not whether Stuart Madden is competent – he is – but whether he was able to make a knowing and intelligent waiver of his rights when he entered his plea.

Madden's Supplemental Reply at 3:11-18. Defendant cites to *Gordinez v. Moran*, 509 U.S. 389, 400-401 (1993) for support for his argument that there is a distinction between what needs to be shown to support a finding of mental competence and what is required to show that a plea was knowingly and intelligently made. Defendant is correct in that a court must satisfy itself that a plea is knowingly and voluntarily made even if the defendant is mentally competent. "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings. . . . The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.* at 401, fn 12. However, no higher standard of competency is required to plead guilty than to stand trial. *Id* at 398.

The fact that Madden was mentally competent at the time of his plea seems clear and may, in fact, not be contested by the defense. However, the defendant's briefing does seem to confuse the concept of being competent with acting freely and intelligently. In any event, the question is

whether the defendant has made a sufficient showing that Madden did not freely and voluntarily enter his plea such that a just and fair reason exists for him to withdraw it.

The court finds defendant has failed to make a plausible showing that he did not freely and voluntarily enter his plea. Judge Fogel's Rule 11 colloquy was thorough and appropriately inquired as to defendant's mental health. Dr. Dusay does not explain the basis of his apparent opinion that even if Madden were fully medicated, he did not make a "meaningful" change of plea. No evidence has been offered showing why Madden's ability to understand the significance and consequences of his plea, assuming he had taken his medication, was impaired. No evidence of coercion or other undue influence has been made. Dr. Dusay did testify that Madden's psychiatric diseases caused Madden to answer Judge Fogel's questions in a robotic fashion. Dr. Dusay also described Madden as being disassociated. However, no further explanation was given as to how that illustrates that Madden's plea was not free and voluntary. On cross-examination by the government, Dr. Dusay indicated that one in a robotic and disassociative state would be excessively passive. He, however, denied that Madden's interjection of questions to Judge Fogel during their colloquy was inconsistent with a state of passivity. Assuming that one can be in a robotic and disassociative state, there is no evidence that explains how Madden's responses to Judge Fogel's questions suggest that state.

Although the government has not offered a psychiatrist or other mental health professional to challenge Dr. Dusay's opinion, to the extent he actually gave one as to Madden's inability to make a knowing and voluntary plea assuming he had taken his prescribed medications, no rule of law requires the prosecution to offer psychiatric testimony whenever a defendant offers such testimony. *See United States v. Ingman*, 426 F.2d 973, 976 (9th Cir. 1980). The court does not find Dr. Dusay's opinion reliable as to Madden's ability to understand the significance of his plea assuming he was taking his medications. His opinion appears speculative.

**D.     Breach of Agreement Not to Disclose Certain Allegedly Confidential and Misleading Information**

Defendant relies on *Santobello v. New York,* 404 U.S. 257 (1971), in contending that where the government has breached a plea agreement, the defendant is entitled to either specific performance of the agreement or the opportunity to withdraw his plea. Def.'s Fourth Supplemental

ORDER RE: MADDEN'S MOTION TO WITHDRAW PLEA
CR-07-00245 RMW

1  Br. at 3:10-3:11.  Defendant submits that he does not seek specific performance and that the only
2  appropriate remedy is to grant his motion to withdraw the guilty plea.  *Id.* at 3:14-3:15.  In
3  *Santobello*, a replacement prosecutor made a sentencing recommendation where the previous
4  prosecutor promised defendant that he would not make such recommendation.  *Santobello,* 404 U.S.
5  at 259.  The Supreme Court remanded back to the state court and gave it discretion to determine the
6  ultimate relief, explaining that the state court was in a better position to determine whether the
7  circumstances of the case, "require[d] only that there be specific performance of the agreement on
8  the plea, in which case [defendant] should be resentenced by a different judge, or . . . require[d]
9  granting the relief sought by [defendant], i.e., the opportunity to withdraw his plea of guilty."  *Id.* at
10 263.  Here, as the government points out, sentencing has yet to occur and defendant will be
11 sentenced without the judge's knowledge of the allegedly prejudicial material.  Although the
12 government's promise was not part of the written plea agreement, the government does not dispute
13 its  promise.   The promise, however, has essentially been specifically enforced.  Further, no
14 showing has been made that the promise was part of the consideration or inducement of the plea.

15        **E.      Sentencing by the Same Judge that Accepted the Plea Bargain**

16        Defendant argues he is entitled to be sentenced by the same judge that accepted his plea and
17 since Judge Fogel has recused himself, thus precluding him from sentencing the defendant, he is
18 entitled to withdraw his guilty plea.  The defendant cites a number of California state cases as well
19 as one federal case for this proposition.  The one federal case that he does cite, however, does not
20 seem to support the proposition. Defendant provides the following quote from *Marshall v. Cabana*,
21 835 F.2d 1101, 1102 (5th Cir. 1988): "[b]y pleading guilty to armed robbery, [defendant] placed his
22 sentencing under the exclusive control of the judge before whom he plead."  In *Marshall*, the
23 defendant was sentenced by the same judge that heard his guilty plea and defendant subsequently
24 challenged his sentence on other grounds.  It appears that the court was merely instructing that by
25 pleading guilty, the defendant was subject to the sentence given by that judge.  A more relevant case
26 comes out of the Eleventh Circuit, which affirmed the district court's denial of defendant's motion to
27 withdraw his guilty plea where the judge who heard the guilty plea recused himself shortly before
28 sentencing, without notifying defendant, and where a different judge sentenced the defendant.

*United States v. Russell*, 776 F.2d 955 (11th Cir. 1985). In *Russell*, the Eleventh Circuit held that the defendant's due process rights were not violated where the judge in front of whom he pleaded guilty was not the judge that rendered his sentence even where the defendant did not receive prior notice that a different judge would render the sentence. *Id.* Here, the court sees no reason to allow defendant to withdraw his plea on the basis that he faces sentencing by a different judge than the judge who took his plea, especially since a district judge, unlike state court practice, is forbidden from participating in plea agreement discussions. Fed. R. Crim. P. 11(c)(1).

### III. CONCLUSION AND ORDER

Defendant was represented by counsel when he entered into his plea agreement and pled guilty. He was thoroughly advised of his rights and the effect of pleading guilty. He is intelligent and has a J.D. degree. Although suffering from psychiatric diseases, nothing suggests that he is not mentally competent or did not understand the significance of his decision to plead guilty. There is no evidence that he was coerced into pleading. Although the defendant apparently required psychiatric medication, his statements at his plea suggested he was taking his medications and in an appropriate mental state to make a plea. The court does not find a fair and just reason to now set aside the plea that he made more than fifteen months before he moved to set it aside. Therefore, the motion is denied.

The parties are to meet and confer with each other and the court's clerk regarding a date for sentencing and, if the government believes it is necessary to pursue its remand motion pending sentencing, a date for the hearing on the government's motion to remand. The parties are to schedule the sentencing to occur within the next forty-five days. If the parties cannot agree within the next ten days on a sentencing date, the court will schedule that date.

DATED:   5/20/09

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

ORDER RE: MADDEN'S MOTION TO WITHDRAW PLEA
CR-07-00245 RMW

**THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WAS PROVIDED TO:**

**Counsel for plaintiff:**

**David Rossiter Callaway**
U.S. Attorney's Office
NDCA, San Jose Branch
150 Almaden Blvd., Suite 900
San Jose , CA 95113-3081
Email: david.callaway@usdoj.gov

**Stephanie M. Hinds**
Assistant United States Attorney
450 Golden Gate Avenue
Box 36055
San Francisco , CA 94102
Email: stephanie.hinds@usdoj.gov

**Counsel for defendant:**

**e. robert (bob) wallach, P.C.**
Lawyer-Counselor
P.O. Box 2670
San Francisco, CA 94126
415 989-6445
erobertbob@sbcglobal.net

**James McManis**
**Matthew Schechter**
**David Joshua Voorhees**
McManis Faulkner & Morgan
50 West San Fernando Street, 10th Floor
San Jose , CA 95113
408 279-8700
Email: jmcmanis@mcmanislaw.com
Email: mschechter@mcmanisfaulkner.com
Email: jvoorhees@mfmlaw.com

Date:      5/20/09                    TER
                                      Chambers of Judge Whyte

ORDER RE: MADDEN'S MOTION TO WITHDRAW PLEA
CR-07-00245 RMW

13